## BARRETT v. BREAULT.

1. Appeal and Error—Fraud—Evidence—Verdicts and Findings.
   On appeal from judgment for plaintiff and denial of new trial
   in action tried without a jury, evidence is reviewed to deter-
   mine whether or not trial court was in error in making finding
   of fraud.

2. Fraud—Joint Adventures—Fiduciaries—Disclosure.
   In action by widow for fraud, deceit and misrepresentations by
   appellants in joint adventure in purchase of land, relation of
   plaintiff and appellants *held*, of such a fiduciary nature as to
   require latter to exercise highest degree of fairness and in-
   tegrity in dealings with plaintiff and that they make full dis-
   closure to her of their secret knowledge, intents and purposes
   regarding the transaction.

3. Same—Misrepresentations.
   Appellants, two of three members of a partnership firm which
   had acted as widow's trusted agent in selling lots and making
   collections in subdivisions which had been owned by her late
   husband and who induced her to join such firm in the purchase
   of a tract of land by falsely representing it could be bought
   for higher price than that for which they had shortly previously
   contracted to purchase it and that firm was going to invest a
   stated sum *held*, to have worked a fraud upon plaintiff since
   they wilfully and deceitfully withheld such facts as to which
   their fiduciary relationship affirmatively required them to make
   full disclosure.

4. Limitation of Actions—Fraudulent Concealment of Cause of
   Action—Actions Based on Fraud Distinguishable.
   In applying 3 Comp. Laws 1929, § 13983, providing that action
   may be brought within two years after discovering right of
   action, where there was fraudulent concealment thereof, not-
   withstanding it would otherwise be barred by statute of limi-
   tations, regard must be had for distinction between actions
   based on fraud or breach of trust and those where such mis-
   conduct does not taint the cause of action.

5. SAME—FRAUD—FIDUCIARIES—RUNNING OF STATUTE.

General rule that running of statute of limitations will not be postponed if defrauded person may discover fraud from public records does not apply to person while fiduciary relationship exists, appellants' conduct toward plaintiff was calculated to mislead her and allay her suspicion and nothing occurs to indicate necessity for investigation (3 Comp. Laws 1929, §§ 13976, 13983).

6. SAME—FRAUDULENT CONCEALMENT—DISCOVERY.

Failure of appellants, who induced plaintiff to invest money in purchase of real estate as a member of an alleged joint adventure by means of fraudulent misrepresentations, to make affirmative disclosure when they were under fiduciary relationship with her *held*, to amount to fraudulent concealment of her cause of action and to permit application of statute permitting commencement of action within two years of discovery of fraud notwithstanding statute of limitations might otherwise have barred the action (3 Comp. Laws 1929, §§ 13976, 13983).

7. FRAUD—DAMAGES—INVESTMENT—INTEREST.

Plaintiff who was induced to invest money by means of fraudulent representations *held*, entitled to judgment for amount of investment together with interest at five per cent. from date of investment.

Appeal from Wayne; Webster (Arthur), J. Submitted January 21, 1936. (Docket No. 57, Calendar No. 38,755.) Decided June 4, 1936.

Case by Margaret M. Barrett against Frank A. Breault, Alfred V. Breault and William P. Bradley, jointly and severally as individuals, and as copartners doing business as Breault Brothers & Bradley, for fraud in the sale of stock. From judgment for plaintiff against defendants Breault, they appeal. Affirmed.

*E. E. Juntunen*, for plaintiff.

*Crawford S. Reilley*, for defendants.

Toy, J. Plaintiff commenced this action on October 27, 1933, against the defendants, jointly and severally, to recover damages in the amount of $50,000, based upon defendants' alleged fraud, claimed to have occurred in the year 1925. Trial was had in the circuit court, without a jury, and on May 6, 1935, a judgment was entered for plaintiff against defendants Frank A. Breault and Alfred V. Breault, jointly and severally, in trespass on the case, in the amount of $22,041.31, and a judgment of no cause for action in favor of defendant William P. Bradley. A motion for new trial was made by defendants Breault, which was denied; whereupon, defendants Breault appealed to this court.

Appellants contend that the evidence did not show they were guilty of fraud, deceit or misrepresentations, and that the trial court was in error in making such a determination. To make decision on this point, and so that proper portrayal of our reasons appear, we deem it necessary to recount the evidence in relation thereto.

In 1922 the plaintiff, a resident of Detroit, after the death of her husband went to the office of the defendants and entered into a contract with them, designating them as her agents on a commission basis for the purpose of selling lots and making collections in two subdivisions which had been owned by her late husband. Defendants acted as her agents in such regard from that time until October, 1930, when plaintiff terminated the agency. Plaintiff reposed "perfect confidence and trust" in the appellants and "left everything in their hands," always trusting and relying on them, even to placing signed blank deeds and other papers in their office for their future use. At the trial, defendants Breault acknowledged the existence of such a confi-

dential and fiduciary relationship. Defendant Frank A. Breault testified in relation thereto:

"When we were handling affairs for Mrs. Barrett under the agreement covering her subdivision, she left pretty much everything in our hands, left blank deeds and other signed papers in our office for our use. When we called her up to sign a paper she would come down and sign it. *She always depended on us. * * * We knew that whatever we told her she would pretty much depend on.*"

Plaintiff testified that in May, 1925, defendant Alfred Breault telephoned her and told her about, "this wonderful piece of land out on the corner of Grand River and Twelve Mile Road that they were considering buying and they wanted me to go in with them, and I listened to him, and he said a great many wonderful things about it—particularly told me about Mr. Bradley, that Mr. Bradley and Alfred and Frank were all going to go in together and they wanted me to come in because I had given them my business, and they wanted me to have a nest egg for my children;" that Alfred Breault then told her he would send his brother, Frank Breault, to see her; that two days later defendant Frank Breault called on her at her home. She further testified, in relation to his visit, as follows:

"*Q.* Did you have any conversation with Mr. Frank Breault?

"*A.* Yes.

"*Q.* What was the conversation?

"*A.* Well, Frank told me that Breault Brothers & Bradley, the firm, were going to buy this land, that he had talked with the owner about it and that it was a wonderful piece of property on the Twelve Mile Road, * * * they had to pay quite a sum of money, and that I would have this again for my

children, it would be a very good thing for me to do with some of this money.

"*Q.* Did Mr. Frank Breault make any mention to you as to what the property would cost?

"*A.* Yes, he said that they could get it from the owner for $650 an acre.

"*Q.* Did he say to you at that time that he was the owner?

"*A.* Oh, no, he did not say any such a thing.

"*Q.* What did he say?

"*A.* He said that they were going to buy it and wanted me to come in with them."

Plaintiff testified further, that defendant Frank Breault informed her that Breault Brothers & Bradley, a copartnership, were going to put $30,000 in the venture.

The record shows that a few days later defendant Frank Breault again visited the plaintiff, showed her a prospectus prepared by his brother, Alfred, which contained statements that the purchase price of the property would be $650 an acre and that Breault Brothers & Bradley would invest $30,000 in the deal. It also contained many alluring statements of expectant profits in fabulous amounts.

The plaintiff knew nothing of real estate values or expectancies, but believing and relying upon the representations made to her by defendants Breault and on those contained in the prospectus, she was induced to invest the sum of $15,064 in the venture.

At the time that defendants Breault represented to plaintiff they could buy the property for $650 an acre, they had already (May 1, 1925) entered into a contract with one Ward S. VanDusen, the owner, for its purchase for $500 an acre. On the purchase from VanDusen, defendants Breault received a credit of $5,000 as a commission for the sale thereof.

On July 6, 1925, defendants Breault formed a corporation, known as the Grand River Highway Development Company, with a capital stock of $75,000, and in the articles of incorporation it was stated that defendants Breault each subscribed $24,000 and that plaintiff subscribed $10,000. The plaintiff did not sign these articles. On July 6, 1925, the corporation, by resolution of its board of directors, purchased from defendants Breault the property involved, for $130,000, with $60,000 as a down payment. At that time defendants Breault did not own the title to the property, but were in possession by virtue of their land contract with VanDusen. On May 1, 1926, however, they received a warranty deed from VanDusen, and executed a mortgage to him for $60,000 for the balance of the purchase price, and on the same date defendants Breault conveyed the property to the corporation by warranty deed, subject to the mortgage.

By reason of the purchase of the property by defendants Breault at $500 an acre and its sale to the corporation for $650 an acre, plus the commission of $5,000 credited to them, defendants Breault made a profit of $35,000. At no time was the "deal" with VanDusen disclosed to plaintiff, but on the contrary, it was carefully concealed from her. Breault Brothers & Bradley never invested $30,000 in the venture as was represented to the plaintiff by the defendants Breault, in their prospectus, as well as verbally.

At the trial, on cross-examination, defendant Frank Breault testified,

"The partnership (Breault Brothers & Bradley) never intended to invest $30,000 and never did."

He further testified:

"*Q.* Now all this money that was paid in by these parties (plaintiff and others), that money went into your pocket and Alfred Breault's pocket, did it not?

"*A.* Yes, sir.

"*Q.* So that what this corporation actually amounted to was taking a chance in real estate at the expense of the money of the other people; you got all your money back?

"*A.* Yes, sir.

"*Q.* You got your money back, and you got 24,000 shares (dollars ?) apiece for nothing?

"*A.* That is what our interest amounted to, yes."

He further testified that:

"The land was foreclosed in chancery about a year and a half ago. I didn't exercise our rights under the equity of redemption. * * * The stock of the corporation is not worth anything."

It is apparent that throughout this transaction plaintiff relied implicitly on the representations made to her by defendants Breault; that she placed them in a position of especial trust and confidence —a position admittedly accepted and acknowledged by these defendants. Occupying such a fiduciary position in this joint venture, it became and was the duty of defendants Breault to exercise the highest degree of fairness and integrity in their dealings with plaintiff, and required of them that they make full disclosure to her of their secret knowledge, intents and purposes regarding the whole affair. *Latimer* v. *Piper,* 261 Mich. 123. The defendants Breault, at the time they represented to plaintiff that the property could be bought from the owner at a price of $650 an acre, already had entered into a contract to purchase the same for $500 an acre,

yet they wilfully and deceitfully withheld this knowledge from the plaintiff. They were, because of their fiduciary relationship with the plaintiff, under an affirmative obligation to make full disclosure of this fact to her, and their failure to do so, under the circumstances, was a fraud upon her.

Defendants Breault represented to plaintiff that the partnership of Breault Brothers & Bradley, the firm which had been acting as her agents for years, and in whom she had the utmost confidence, were going to invest $30,000 in the venture. This representation was false, and known by defendants Breault to be false when it was made, for Frank Breault testified that the firm did not invest any amount and that it never intended to do so.

Because of the afore-mentioned fraudulent concealments and misrepresentations, defendants Breault secured from plaintiff $15,064. Plaintiff therefore had a cause of action for that amount against them.

However, appellants contend that plaintiff's claim is barred by virtue of the statute of limitations (3 Comp. Laws 1929, § 13976). Appellants contend further, that the trial court was in error in holding that: "Plaintiff first learned that the land was purchased from the owner for $500 per acre in August, 1932, and began her action within two years of that discovery," and therefore plaintiff's cause of action was not barred by virtue of section 13976, but that it was saved by virtue of 3 Comp. Laws 1929, § 13983, which reads as follows:

"If any person who is liable to any of the actions mentioned in this chapter, shall fraudulently conceal the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within two years after the per-

son who is entitled to bring the same shall discover that he had such cause of action, although such action would be otherwise barred by the provisions of this chapter."

It is significant that none of the corporation records, which were kept by defendants Breault, disclosed the action of such defendants in purchasing the property at $500 per acre and selling it, at a profit, to the corporation. The deeds did not recite the purchase price and the resolution of the board of directors authorizing the purchase carefully concealed the true facts.

Plaintiff testified:

"I didn't inspect the records of the corporation. I trusted them (defendants Breault) absolutely. * * * A lot of rumors went around and I am not very quick to believe in rumors, but I just thought I would write to VanDusen. He was in California. That was in 1932. Mr. VanDusen wrote me in August, 1932. Came to Detroit and called on me. I imagine that was the last of September, 1932. I talked with him in reference to how much he sold the land to Breault Brothers for. He told me the price. Said they paid $500 an acre. Previous to that I had no notice that the land had been purchased for less than $650, I didn't know before I met VanDusen that the land had been purchased from him by Breault Brothers."

In reference to the point here involved, the trial court in its opinion said:

"The basis of plaintiff's action is a misrepresentation or fraud in June, 1925. The statutory time expired in 1931. Plaintiff first learned that the land was purchased from the owner for $500 per acre in August, 1932, and began her action within two years of that discovery (3 Comp. Laws 1929, § 13983).

"Defendants say there was no artifice planned to prevent inquiry or escape investigation. In other words, no affirmative or fraudulent acts of concealment, and, therefore, the action was barred in 1931.

"But the basis of plaintiff's action is fraud; and the Supreme Court in *Dowse* v. *Gaynor,* 155 Mich. 38, 43, approved the rule that, 'Where, however, the basis of the action is a fraud perpetrated by the defendant, the original fraud is regarded as a continuing affirmative act, and mere silence of the defendant is treated as concealment.'

"Doubt was thrown upon the rule by some of the language in *Ramsey* v. *Child, Hulswit & Co.,* 198 Mich. 658, 668, but in the more recent case of *McNaughton* v. *Rockford State Bank,* 261 Mich. 265, 268, the distinction was clearly pointed out between 'actions based on fraud or breach of trust * * * and those where such misconduct does not taint the cause of action.' "

The learned circuit judge, in the portion of his opinion above quoted, correctly stated the law.

The conduct of the defendants Breault toward plaintiff was calculated to mislead her and allay her suspicion. At no time prior to her talk with Van-Dusen in September, 1932, did any adequate opportunity exist for the discovery of the fraud. Prior thereto, nothing occurred to indicate the necessity for investigation. Therefore, and in view of the long term fiduciary relationship between the parties, we hold that the failure of defendants Breault to make affirmative disclosure amounted to a fraudulent concealment of the plaintiff's cause of action. Such cause of action is within the provisions of 3 Comp. Laws 1929, § 13983, and is not barred by the statute of limitations. *McNaughton* v. *Rockford State Bank, supra; Holman* v. *Moore,* 259 Mich. 63;

*Heap* v. *Heap,* 258 Mich. 250; *Dowse* v. *Gaynor, supra.*

Appellants contend that the judgment of the trial court, in the amount of $22,041.31, is excessive. The court held that the plaintiff was entitled to the amount she invested together with simple interest at five per cent. from the date of payment. This, we think, was a proper computation.

The judgment of the circuit court is affirmed, with costs to plaintiff.

North, C. J., and Fead, Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred. Potter, J., took no part in this decision.