ROCHE v. BLAIR.

1. APPEAL AND ERROR—ORDER OF DISMISSAL—PLEADING.
   In reviewing order dismissing an action at law all properly pleaded allegations in plaintiffs' declaration are assumed to be true.

2. CONSPIRACY—DIVISION OF MONEY—EVIDENCE.
   While proof of division of money obtained as result of alleged conspiracy to defraud plaintiffs would tend to establish the alleged conspiracy, it is not an overt act causing damage to plaintiffs whose property is alleged to have been taken as result of fraudulent conspiracy.

3. SAME—GRAVAMEN OF CIVIL ACTION.
   In a civil action for damages resulting from wrongful acts alleged to have been committed in pursuance of a conspiracy, the gist or gravamen of the action is not the conspiracy but is the wrongful acts causing the damages.

4. SAME—DAMAGES.
   A conspiracy standing alone without the commission of acts causing damage would not be actionable as the cause of action does not result from the conspiracy but from the acts done.

5. SAME—PARTIES.
   Conspiracy, by reason of the connection it involves among the conspirators, may cause individuals to be responsible, who, but for the conspiracy, would not be responsible at all.

6. ACTION—CASE—CONSPIRACY.
   An allegation of conspiracy does not change the nature of an action on the case for damages or add anything to its legal force and effect.

7. CONSPIRACY—NATURE OF CIVIL ACTION—PARTIES.
   In an action on the case in the nature of conspiracy, although several are sued, the conspiracy need not be proved and the judgment may go against one and the others be acquitted, as the foundation of the action is the damage, not the conspiracy.

8. SAME—OVERT ACTS—CONCEALMENT—STATUTE OF LIMITATIONS.
   Where overt acts which occurred some eight years or more be-
   fore commencement of action of case in the nature of con-
   spiracy to defraud plaintiffs were known to plaintiffs but
   fact of conspiracy, theretofore concealed from plaintiffs, was
   not discovered until less than two years before commencing
   action, cause of action was barred by six-year statute of limi-
   tations (3 Comp. Laws 1929, §§ 13976, 13983).

Appeal from Wayne; Webster (Clyde I.), J.
Submitted April 15, 1943. (Docket No. 66, Calen-
dar No. 42,272.) Decided June 7, 1943.

Action by John E. Roche and wife against Frank
W. Blair and others for damages arising from al-
leged conspiracy to defraud. Action dismissed on
motion. Plaintiffs appeal. Affirmed.

*Kenneth D. Wilkins* and *Edward F. Conlin* (*Burke
& Burke,* of counsel), for plaintiffs.

*Beaumont, Smith & Harris* (*Charles H. McIntyre,*
of counsel), for defendants.

STARR, J. Plaintiffs began the present suit in
December, 1941, and in their amended declaration
complained of defendants "in an action in the nature
of a civil conspiracy to defraud." Defendants
moved to dismiss on the ground that the declaration
did not state a cause of action because, the alleged
acts of fraud all having occurred more than six
years prior to the beginning of suit, action therefor
was barred by the statute of limitations (3 Comp.
Laws 1929, § 13976 * [Stat. Ann. § 27.605]). The

---

* This section has been amended as follows: Acts Nos. 21, 193,
Pub. Acts 1937, and Act No. 72, Pub. Acts 1941 (Comp. Laws Supp.
1942, § 13976, Stat. Ann. 1942 Cum. Supp. § 27.605).—REPORTER.

trial court granted defendants' motion and on October 7, 1942, entered an order dismissing the case as to all defendants. Plaintiffs appeal from such order.

In reviewing the order of dismissal all properly pleaded allegations in plaintiffs' declaration are assumed to be true. *Dailey* v. *River Raisin Paper Co.,* 269 Mich. 443. In their declaration plaintiffs alleged, in substance, that on January 1, 1928, they owned a 240-acre dairy farm in Washtenaw county, together with stock, tools, and equipment, which as a going business was of the value of $150,000; that such farm was subject to a mortgage for $23,000 to defendant Union Joint Stock Land Bank of Detroit (herein referred to as Land Bank) and a second mortgage for $3,250 to the Central States Investment Corporation; that defendants Gossard and Blair were officers of the Land Bank and managed its mortgage loan business; that they were also officers of and owned controlling interest in the Central States Investment Corporation; that defendant Masters was attorney for both corporations; and that the Central States Investment Corporation had been organized "ostensibly for the purpose of lending money on second mortgages but actually for the purpose of acquiring ownership to farms upon which Union Joint Stock Land Bank had first mortgages." Plaintiffs further alleged:

"That on or about the first day of January, 1928, well knowing the true value of the farm and dairy business and wickedly coveting the same for themselves, said defendants Frank W. Blair, individually, the Central States Investment Corporation and the Union Joint Stock Land Bank of Detroit and Masters fraudulently conspired and confederated together to defraud plaintiffs out of their farm

aforesaid by illegal and oppressive means, and entered upon a course of action, working in concert, well calculated to unlawfully foreclose said mortgages, ruin the credit of the plaintiffs, seize the land, force the plaintiffs or one of them into bankruptcy, sell the land and dairy business and make a great financial gain thereby which gain was to be divided upon some basis among the aforesaid defendants.''

In their declaration plaintiffs further alleged that in 1928 while they were 'not in default, in pursuance of said conspiracy defendants began foreclosure of both mortgages by advertisement; that defendants encouraged other creditors to bring suits and to foreclose chattel mortgages on stock and equipment on plaintiffs' farm; that defendants refused to give them an accounting or statement of the amount due on the second mortgage; and that when plaintiffs sought to ascertain the amount necessary to redeem from mortgage foreclosures, defendants demanded a bonus of $15,000 over and above the amount of the mortgages. Plaintiffs also charged, in substance, that as a part of the conspiracy, defendants entered into an illegal deal with one Julia Barker whereby a fictitious sale of the farm property was made to her, and certain moneys received were divided between the individual defendants; that defendants made false statements to an association of credit men regarding the integrity of plaintiff John E. Roche; that such statements resulted in circular letters being sent to plaintiffs' creditors causing them to sue and harrass plaintiffs, thereby forcing plaintiff John E. Roche into voluntary bankruptcy. They alleged further that in July and August, 1940, through interviews with Julia Barker at the Detroit house of correction, they first learned of the alleged conspiracy by and between defendants; that there-

after in June, 1941, they learned other facts concerning the dealings between defendants and Julia Barker and regarding the division among the individual defendants of the proceeds from the sale of plaintiffs' farm property. Plaintiffs alleged further:

"Your plaintiffs hereby charge that * * * unbeknown to your plaintiffs, all of the defendants were working in concert to destroy plaintiffs' dairy business, take the farm by foreclosure, make it impossible for plaintiffs to redeem, then to sell the farm and divide their ill-gotten gains between said defendants, and this was to be done in the guise of legitimate banking transactions in which only the land bank was interested whereas in truth and in fact all of the defendants were personally interested.

"That as a result of said unlawful conspiracy carried out as aforesaid, the plaintiffs not only were defrauded out of their farm and dairy business of the value of $150,000 but the good name and credit of the plaintiffs has been ruined and the plaintiffs have been unlawfully deprived of net profits of $10,000 a year or thereabouts since 1928 until the date hereof."

The question presented is: assuming the facts alleged in plaintiffs' declaration to be true, does the declaration state a cause of action?

The record shows, and in their brief plaintiffs admit, that in 1933 or prior thereto they had knowledge of all fraudulent acts charged against defendants except the alleged conspiracy and the division of certain money between the individual defendants. Plaintiffs contend that defendants fraudulently concealed from them the existence of such conspiracy and the facts concerning the division between the individual defendants of money received from the sale of the farm property; that they did not discover

the facts concerning such conspiracy and division of money until about July, 1940; and that under 3 Comp. Laws 1929, § 13983 (Stat. Ann. § 27.612), they were entitled to begin the present action within two years after such discovery. Such statute provides:

"If any person who is liable to any of the actions mentioned in this chapter, *shall fraudulently conceal the cause of such action* from the knowledge of the person entitled thereto, the action may be commenced at any time within two years after the person who is entitled to bring the same shall discover that he had such cause of action, although such action would be otherwise barred by the provisions of this chapter."

The above statute refers to fraudulent concealment of the cause of action. What was plaintiffs' cause of action? If it was the alleged conspiracy, they could begin suit within two years after discovering such conspiracy. However, if their cause of action was defendants' alleged overt acts, of which they had knowledge in or prior to 1933, their action would be barred by the six-year statute of limitations (3 Comp. Laws 1929, § 13976). Plaintiffs argue, in effect, that the division between individual defendants of certain money received from the alleged fictitious sale of the farm property in question to Julia Barker was the last in the chain or series of defendants' overt acts and that plaintiffs began the present action within two years after their discovery, in 1940, of that act. Proof of such division of money would tend to establish the alleged conspiracy by defendants. However, such division was not an overt act causing the damages plaintiffs claim to have sustained.

The law is well established that in a civil action for damages resulting from wrongful acts alleged to have been committed in pursuance of a conspiracy,

the gist or gravamen of the action is not the conspiracy but is the wrongful acts causing the damages. The conspiracy standing alone without the commission of acts causing damage would not be actionable. The cause of action does not result from the conspiracy but from the acts done. Therefore, in the present case the alleged conspiracy, which plaintiffs claimed to have first discovered in 1940, was not their cause of action. Their cause of action was the alleged wrongful acts of defendants, which caused their claimed damages. The allegations of conspiracy did not change the nature of plaintiffs' action.

In the case of *Bush* v. *Sprague,* 51 Mich. 41, plaintiff instituted suit to recover money alleged to have been obtained through fraud. The first count of the declaration alleged that defendants entered into a conspiracy to cheat and defraud him. The second count alleged that the defendants had united in committing the fraud but did not allege conspiracy. The court said, p. 48:

"Conspiracy is not the ground of these actions on the case. The cause of action does not result from the conspiracy, but from the thing done and the damage flowing from it. Here, it is the fraud and damage. Conspiracy, by reason of the connection it involves among the conspirators, may cause individuals to be responsible, who, but for the conspiracy, would not be responsible at all."

In *Scofield* v. *Clarke,* 179 Mich. 681, plaintiff's declaration alleged fraud and conspiracy. The court quoted, with approval, from *Bush* v. *Sprague, supra,* and said further, pp. 691–692:

"For the purpose of recovering for this injury against others than André, plaintiff has added a conspiracy charge that defendants and appellants conspired, assisted, and took part in such scheme.

Authorities are abundant which hold that the allega-
tion of conspiracy does not change the nature of this
action on the case for damages, or add anything to
its legal force and effect.  8 Cyc. p. 647, and cases
cited.''

In *Auto Workers' Temple Ass'n* v. *Janson,* 227
Mich. 430, plaintiff sued to recover damages result-
ing from an alleged conspiracy between defendants
in connection with plaintiff's purchase of certain
real estate.  The court quoted, with approval, the
following, p. 433:

'' 'However, in an action on the case in the nature
of conspiracy, which has superseded the ancient
writ of conspiracy, although several are sued, the
general rule is that judgment may go against one,
although the others are acquitted, *as the foundation
of the action is the damage and not the conspiracy.'*
12 C. J. p. 646.   *   *   *

'' 'As the gist of the modern civil action of con-
spiracy, is the damage and not the combination, the
authorities sustain the proposition that ordinarily a
verdict may be rendered against one of the defend-
ants even though no conspiracy is proved.'   *   *   *
5 R. C. L. p. 1106.

''This rule has been heretofore recognized by this
court.''   (Citing *Bush* v. *Sprague, supra; Scofield* v.
*Clarke, supra*).

''A mere conspiracy to commit a fraud is never of
itself a cause of action.''   12 C. J. § 107, p. 586.

''The gist or gravamen of the action is not the
conspiracy itself, but is the civil wrong, which is done
under the conspiracy, and which results in damage
to plaintiff.   *   *   *   The conspiracy itself, with-
out any actionable wrongs being done thereunder,
ordinarily cannot be made the subject of a civil
action.''   15 C. J. S. § 21, pp. 1031, 1032.

''The conspiracy, not being the gravamen or gist
of the action, as stated *supra,* § 21, an allegation of

the conspiracy does not in and of itself allege a cause of action, and, ordinarily it need not be alleged in order to impose liability for the wrong on all who have conspired to commit it, and, on the other hand, an allegation of conspiracy does not warrant a recovery, if there is no right of action independent of the conspiracy." 15 C. J. S. § 25, p. 1037.

In 11 Am. Jur. § 45, p. 577, it is stated:

"Accurately speaking, there is no such thing as a civil action for conspiracy. The action is for damages caused by acts committed pursuant to a formed conspiracy, rather than by the conspiracy itself; and unless something is actually done by one or more of the conspirators which results in damage, no civil action lies against anyone. The gist of the civil action for conspiracy is the act or acts committed in pursuance thereof—the damage—not the conspiracy or the combination."

From the numerous authorities which establish the rule applicable to the present case that the cause of action arises from the wrongful acts and resulting damage and not from the alleged conspiracy, we cite only the following: *Walton* v. *Hymans,* 302 Mich. 256; *Hanover Fire Insurance Company of New York* v. *Furkas,* 267 Mich. 14; *Nalle* v. *Oyster,* 230 U. S. 165 (33 Sup. Ct. 1043, 57 L. Ed. 1439); *Northern Kentucky Telephone Co.* v. *Southern Bell Telephone & Telegraph Co.* (C. C. A.), 73 Fed. (2d) 333 (97 A. L. R. 133); *Glenn Coal Co.* v. *Dickinson Fuel Co.* (C. C. A.), 72 Fed. (2d) 885; *Arndt* v. *Herman,* 21 Fed. Supp. 884; *Wallace* v. *Kerr,* 42 Cal. App. (2d) 182 (108 Pac. [2d] 754); *Dickson* v. *Young,* 202 Iowa, 378 (210 N. W. 452); *DesLauries* v. *Shea,* 300 Mass. 30 (13 N. E. [2d] 932); *Loewinthan* v. *Beth David Hospital,* 9 N. Y. Supp. (2d) 367; *Darrow* v. *Robert A. Klein & Co., Inc.,* 111 Cal. App. 310 (295 Pac. 566).

The factual situation and equitable relief sought in the case of *Baldwin* v. *Escanaba Liquor Dealers' Ass'n,* 165 Mich. 98, cited by plaintiff, distinguish it from the case at hand. Plaintiffs also rely upon the case of *Barrett* v. *Breault,* 275 Mich. 482. In that case plaintiff sued defendants jointly and severally to recover damages based upon their alleged fraud. Plaintiff was induced to invest money in the purchase of land upon the false representations of defendants, who were her agents, regarding the price of the land and the amount defendants themselves were investing. Defendants contended that plaintiff's claim was barred by the statute of limitations (3 Comp. Laws 1929, § 13976). Plaintiff did not allege a conspiracy by defendants. In affirming a judgment for plaintiff we said, pp. 491–492:

"In view of the long term fiduciary relationship between the parties, we hold that the failure of defendants Breault to make affirmative disclosure amounted to a fraudulent concealment of the plaintiff's cause of action. Such cause of action is within the provisions of 3 Comp. Laws 1929, § 13983, and is not barred by the statute of limitations. *McNaughton* v. *Rockford State Bank,* 261 Mich. 265; *Holman* v. *Moore,* 259 Mich. 63; *Heap* v. *Heap,* 258 Mich. 250; *Dowse* v. *Gaynor,* 155 Mich. 38."

The above case of *Barrett* v. *Breault* and other Michigan authorities cited by plaintiff involve the concealment of the alleged fraudulent acts and not, as in the present case, the alleged concealment of a conspiracy. We agree with the trial court who, in concluding his opinion, said:

"In the instant case there was no fraudulent act committed by any of the defendants within six years before the filing of this suit and as there was no concealment of any fraudulent act committed by any of the defendants and as it seems clear from these cases that the charge of conspiracy is not the cause

of action but that the cause of action must be the fraudulent act or acts resulting in damage to the plaintiffs, committed by one or more of the defendants, this action is barred by the statute of limitations.''

Plaintiffs' cause of action could not be based upon the alleged conspiracy alone. The alleged division between defendants of money from the Barker sale, while tending to establish the conspiracy charged, was not in itself an overt act resulting in damage to plaintiffs and would not prevent the statute of limitations from running against other alleged overt acts which occurred in or prior to 1933 and of which plaintiffs admit knowledge.

We conclude that plaintiffs' cause of action was not the conspiracy but was the overt, wrongful acts of defendants, which resulted in plaintiffs' claimed damages and of which plaintiffs had notice and knowledge in or prior to 1933. Such cause of action was barred by the six-year statute of limitations. Defendants did not ''fraudulently conceal the cause'' of plaintiffs' action so as to bring it within the two-year limitation of the statute hereinbefore quoted (3 Comp. Laws 1929, § 13983).

The order of the trial court dismissing plaintiffs' suit is affirmed. Defendants shall recover costs.

BOYLES, C. J., and CHANDLER, NORTH, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.